Rachel E. Kaufman (CSB# 259353)
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Counsel for Plaintiff and the putative Classes*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD LIPP JR., individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>PREMIER AGENCY REAL ESTATE INC., a California corporation; and GUILLERMO CARDONA, an individual,<br><br>*Defendants.* | CIVIL ACTION FILE NO. '26CV5948 DMS DEB<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

This case addresses a disturbing trend whereby real estate brokerages train their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act ("TCPA") to generate business for the brokerages. Plaintiff Richard Lipp Jr. ("Plaintiff Lipp" or "Lipp") brings this Class Action Complaint and Demand for Jury Trial against Defendants Premier Agency Real Estate Inc. ("Premier Agency Real Estate" or the "Brokerage") and Guillermo

(aka “Memo”) Cardona (“Cardona”) (collectively, “Defendants”) to stop the Defendants from violating the Telephone Consumer Protection Act (“TCPA”) by making pre-recorded telemarketing calls to consumers without consent, in addition to placing unsolicited calls to phone numbers that are registered on the National Do Not Call registry (“DNC”). Plaintiff also seeks injunctive and monetary relief for all people injured by Defendants’ conduct. Plaintiff Lipp, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Lipp is a resident of Corpus Christi, Texas.

2. Defendant Premier Agency Real Estate is a California registered corporation headquartered in Chula Vista, California.

3. Defendant Cardona is an individual residing in California and is the owner and Chief Executive Officer of Premier Agency Real Estate. At all relevant times, Cardona had the authority to direct, supervise, control, and stop the telemarketing conduct of Premier Agency Real Estate’s agents, including Alejandro Obeso.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 (“TCPA”).

5. This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants are located in this District and the wrongful conduct giving rise to this case was directed by the Defendants from this District.

## INTRODUCTION

6. As the Supreme Court has explained, “Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people’s representatives in Congress have been fighting back”. *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in May 2025 alone, at a rate of 155.8 million per day. www.robocallindex.com (last visited June 4, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Premier Agency Real Estate is a real estate brokerage that assists consumers in buying and selling properties throughout California.[3]

15. Premier Agency Real Estate provides training to its real estate agents that includes weekly masterminds, coaching and one-on-one mentorship from its top producers.

16. Premier Agency Real Estate provides required, one-on-one training for the first three to six transactions that its agents generate, as well as training webinars for both new and experienced agents.

17. Premier Agency Real Estate provides consumer leads, marketing tools and sales scripts to its real estate agents:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/premier-agency-re/about/



**Licensed Real Estate Agent**

Premier Agency Real Estate
San Diego, CA

Quick Apply

**World-Class Training & Support – Your Success is Our Priority**

- Weekly masterminds, coaching sessions, and one-on-one mentorship from top producers.
- Proven sales scripts and negotiation techniques to increase conversions.
- Access to a collaborative and growth-oriented team to help you scale faster.

**What Our Agents Say:**
"I appreciate the supportive culture of Premier. They are very focused on growing their agent's businesses. Our success is their priority." – Gary Cashman, Real Estate Agent

**The Best Tools & Transaction Support in the Industry**

- State-of-the-art CRM and transaction management software to streamline your business.



**Licensed Real Estate Agent**

Premier Agency Real Estate
San Diego, CA

Quick Apply

**High-Quality Leads & Business Growth Opportunities**

- Exclusive, high-quality leads—no need to spend thousands on marketing.
- Done-for-you marketing tools to help you stand out in the San Diego market.
- Social media and branding support to help you become the go-to agent in your area.

[4]

18. Premier Agency Real Estate generates revenue through flexible commission plans that begin at a cost of $49 per month to the real estate agent.[5]

---

4 https://www.simplyhired.com/job/IyoXOndt4lcq1_tBXVCKYDwvGVBuBnsV0yf7ZwNFL-Nn6hlvsIUHA - As of June 3, 2025 at 6:16 PM

5 https://web.archive.org/web/20250213071042/https://joinpremieragency.com/

19. Premier Agency Real Estate agents pay $185 for error and omissions insurance, per transaction, as well as a $149 administration fee per transaction.[6]

20. The owner and CEO of Premier Agency Real Estate is Guillermo "Memo" Cardona.[7]

21. Cardona owns other companies including Forward Mortgage, the in-house lender of Premier Agency Real Estate, which provides an additional source of revenue for both the Defendants, Forward Mortgage, and Cardona himself:



[8]

[6] Id.
[7] https://memocardona.com/our-companies
[8] https://www.instagram.com/p/DC5JAIFy8UA/?hl=en

22. As a result of the above, Premier Agency Real Estate and Cardona have a vested interest in the success of all of its agents, as that success generates income for the corporation and for Cardona.

**PREMIER AGENCY AGENTS PROMOTE CASH OFFERS FOR HOMES AS PART OF THEIR WORK AS A REAL ESTATE AGENT FOR PREMIER AGENCY**

23. Defendant Cardona in addition to being the broker of Premier Agency Real Estate is also the CEO of Renovate San Diego [9] which provides "as-is cash offers" on real estate and then fixes them up and resells them.

24. At the same time, Defendant Premier Agency Real Estate advertises cash buying services to homeowners among their real estate activities offered to homeowners.

25. The relationship between Defendant Premier Agency Real Estate and Renovate San Diego is interrelated. Public real estate transactions identify Premier Agency agents representing Renovate San Diego in the acquisition and resale of several properties.

26. For example, in June 2024 Renovate San Diego purchased 2440 Reed Road in Escondido, California with Blake Wood of Defendant Premier Agency Real Estate identified as the buyer's agent. Then Renovate San Diego resold the property

[9] https://renovatesandiego.com/aboutus/

in February 2025 with Defendant Cardona identified as the listing agent of Defendant Premier Agency Real Estate.



[10]

27. Other Premier Agency Real Estate agents also promote cash offers as part of their work as an agent at Premier Agency Real Estate. For example, Nate Higginbotham advertises cash offers as part of his work as an agent of Premier Agency Real Estate. His marketing material also explains that homeowners who decline the cash offers can instead pursue a traditional listing.

[10] https://www.homes.com/property/2440-reed-rd-escondido-ca/d6ef3x1b7nyff/



[11]

28. These business relationships establish that if other agents from Defendant Premier Agency Real Estate solicit cash offers for homes then they seek to earn a commission on the purchase and the resale of that property, or as an opener to a traditional listing agreement.

---

[11] https://thesdhomeseller.com/cash-offer.html (last accessed October 14, 2026)

29. Defendant Premier Agency Real Estate trains and encourages its agents to generate business through cold calling. Obeso's cold calling homeowners about cash offers for their home is consistent with Defendant's business activities.

**PREMIER AGENCY REAL ESTATE TRAINS ITS REAL ESTATE AGENTS TO ENGAGE IN COLD CALLING TO GENERATE BUSINESS**

30. Premier Agency Real Estate trains and directs its real estate agents to generate business by placing cold calls to consumers.

31. Premier Agency Real Estate provides the "Blueprint For Success" on its real estate recruitment website:




32. The Blueprint for Success document provides insight into the training and direction provided by Premier Agency Real Estate.

33. The document discusses business goals and lead generation which includes placing cold calls to generate business:



[12]

34. Later in the Blueprint, Premier Agency Real Estate lists the top lead generation systems that includes:

i. Farm

ii. Expired

iii. For Sale by Owner ("FSBO")

iv. MMM

[12] Page 9 of the Blueprint For Success https://www.dropbox.com/scl/fi/jj1sapqvvptjpg632zp5r/Blueprint-for-Success.pdf?rlkey=uxsr8j2kwe7sc8x4fcyk6eyaa&dl=0


6. THIS YEAR'S
TOP LEAD GENERATION SYSTEMS

| LEAD SOURCES | Name: | Designed to generate ____________ revenue |
| --- | --- | --- |
| Main Lead Sources<br>Past Client/Sphere/Database<br>Farm<br>Internet Leads<br>Open Houses<br>Expired<br>FSBO/MMM | Basic System Outline: | |
| | Team Players Involved: | Estimated Cost of System $ ____________ |

[13]

35. Farm is a lead source for which a real estate agent selects a geography area and targets the consumers within that area to generate business.

36. Expired refers to consumers with expired property listings.

37. FSBO refers to consumers who are listing a property on their own for sale without the use of a real estate agent.

38. MMM, refers to Money Making Mondays in which agents practice sales solicitations to FSBOs using scripts and the place solicitation calls to those consumers.

39. All of the above are lead generation strategies targeting consumers by calling them without consent – i.e. cold calls.

40. Premier Agency Real Estate goes further by training its agents to keep track of their conversations by tracking the number of conversations placed vs. conversations needed to generate business:

[13] Page 18 of the Blueprint

**5.** *NEW PROSPECT*
**CONVERSATIONS NEEDED**

CONVERSATIONS CALCULATION

| | ITEM | AMOUNT | DIRECTIONS |
|---|---|---|---|
| 1 | THIS YEAR'S TRANSACTIONS GOAL | | INPUT total transactions you want |
| 2 | TOTAL NEW PROSPECT CONVERSATIONS NEEDED (ANNUALLY) | | MULTIPLY line 1 by 40 (conversation to sale ratio) |
| 3 | TOTAL NEW PROSPECT CONVERSATIONS NEEDED (MONTHLY) | | DIVIDE line 2 by 11 (months) |
| 4 | TOTAL DAILY NEW PROSPECT CONVERSATIONS NEEDED | | DIVIDE line 3 by 20 (monthly working days) *Minimum 5/5/4's |

[14]

41. Premier Agency Real Estate also uses cold calling to spread awareness of its brokerage and recruit real estate agents:

[14] Page 17 of the Blueprint

> **XL Technologies, LLC** is in **San Diego, California**.
> October 22, 2024 ·
>
> We just wrapped up a successful recruiting campaign for **Premier Agency Real Estate in San Diego**, led by Memo Cardona! 🚀
>
> Using our proven agent acquisition framework, we helped Premier Agency grow beyond the limitations of cold calling and referrals. The goal? Reach every real estate agent in the market with an omnichannel strategy that leaves no stone unturned. Here's how we did it:
>
> 🛠 **Key Campaign Elements**:
>
> ✨ Launched an aggressive email campaign to target agents in the market.
>
> ✨ Created engaging ad campaigns to introduce Premier Agency to a broader audience.
>
> ✨ Produced all campaign assets, including graphic design and compelling copy.
>
> ✨ Integrated the recruiting website with the AgentHire recruiting CRM system for seamless lead tracking.
>
> ✨ Leveraged XL Technologies' proprietary database + Facebook interest categories for pinpoint targeting.
>
> ✨ Ran display ads targeting a cold audience with varied, impactful messaging.
>
> ✨ Created a series of emails to engage a cold audience.

[15]

42. Premier Agency Real Estate provides a customer relationship management ("CRM") platform to its real estate agents that allow its agents to place calls to consumer phone numbers, as per Plaintiff's experience, and based on the following:

[15] https://www.facebook.com/story.php?story_fbid=1147047906867502&id=100046869109891

> Premier Agency Real Estate
>
> **Licensed Real Estate Agent**
>
> Easy Apply
>
> San Diego, CA · $40K - $200K (Employer est.)
>
> **What Our Agents Say:**
> "I appreciate the supportive culture of Premier. They are very focused on growing their agent's businesses. Our success is their priority." – Gary Cashman, Real Estate Agent
>
> **The Best Tools & Transaction Support in the Industry**
>
> - State-of-the-art CRM and transaction management software to streamline your business.
> - Dedicated transaction coordinators to handle paperwork, so you can focus on selling.
> - Marketing and admin support on demand—less time on busywork, more time closing deals.
>
> **The Power of a Recognized Brand in San Diego**
>
> - A well-established brokerage with a strong reputation in the San Diego market.
> - Local expertise and deep connections that give our agents an edge.
> - A culture built on collaboration, integrity, and agent success.
>
> **Who We're Looking For**
>
> - Licensed Real Estate Agents in **San Diego, CA**
> - Motivated professionals looking to **increase their production and income**
> - Agents who thrive in a **supportive, high-performance culture**
> - Those who want to leverage **cutting-edge technology and lead generation**

[16]

43. Premier Agency Real Estate agents have referred to pre-recorded calls in their consent language on related company websites including:

> By providing San Diego REimagined your contact information, you acknowledge and agree to our Privacy Policy and consent to receiving marketing communications, including through automated calls, texts, and emails, some of which may use artificial or prerecorded voices. This consent isn't necessary for purchasing any products or services and you may opt out at any time. To opt out from texts, you can reply, 'stop' at any time. To opt out from emails, you can click on the unsubscribe link in the emails. Message and data rates may apply.

[17]

44. Premier Agency Real Estate profits from the cold calling its agents engage in to generate business.

45. It was this unlawful telemarketing conduct that led to the unsolicited pre-recorded calls that Plaintiff Lipp received, despite having his cell phone number registered on the DNC.

---

[16] https://www.glassdoor.com/job-listing/licensed-real-estate-agent-premier-agency-real-estate-JV_IC1147311_KO0,26_KE27,53.htm?jl=1009699183361 – Job posting from April 4, 2025

[17] https://sandiegoreimagined.com/contact - as of June 4, 2025

46. In response to these calls, Plaintiff Lipp brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**THE CALLS TO PLAINTIFF WERE MADE BY PREMIER'S AGENT WITHIN THE SCOPE OF HIS AGENCY AND WITH PREMIER'S KNOWLEDGE**

47. Alejandro "Alex" Obeso, Jr. ("Obeso") was a licensed real estate agent affiliated with Premier Agency Real Estate, having affiliated his license with the Brokerage.

48. Obeso placed the unsolicited pre-recorded telephone calls and ringless voicemails at issue, including the calls to Plaintiff Lipp, using a service he referred to as "Drop."

49. Obeso made these calls in his capacity as a Premier Agency Real Estate agent and for the purpose of generating real estate business for the Brokerage.

50. Obeso has testified that any realty services he provided to consumers who responded to the calls would have been provided under the Premier Agency Real Estate brand. In addition, he would have paid Premier Agency Real Estate a transaction fee in connection with every transaction resulting from those calls.

51. Premier Agency Real Estate therefore stood to profit directly from the calls Obeso placed, and the calls were made within the scope of, and for the benefit of, Obeso's agency relationship with the Brokerage.

52. Premier Agency Real Estate, through its owner and CEO Cardona, had the right to control whether Obeso made the calls. Obeso has testified that it was his understanding that Cardona was in a position to tell him whether he could or could not make the calls, and that if Cardona had told him to stop, he would have stopped.

53. During the time Obeso was placing the calls, in or about May 2025, Obeso told Cardona that he was making the calls, and specifically told Cardona that he was "sending out ringless voicemails." Cardona said nothing in response and did not instruct Obeso to stop, and Obeso continued placing the calls. Premier Agency Real Estate and Cardona thereby knew of, accepted the benefits of, and ratified the calling conduct.

54. After Premier Agency Real Estate was served with the prior action arising from these calls, Cardona did exercise his control over Obeso, telling Obeso words to the effect of "We're not supposed to make those calls" and "Don't make them," and Obeso agreed to stop. Cardona's acknowledged authority to stop the calls, and his actual exercise of that authority, confirm that the calls were placed within an agency relationship subject to Premier Agency Real Estate's and Cardona's control.

55. Accordingly, Premier Agency Real Estate and Cardona are vicariously liable for the calls placed by Obeso under principles of actual authority, apparent authority, and ratification, and Cardona is individually liable for his personal

participation in, knowledge of, authority over, and ratification of the unlawful calling conduct.

## DEFENDANTS' INDEPENDENT CONTRACTOR POSITION HAS BEEN DISAVOWED UNDER OATH

56. In connection with the dispute over these calls, a written declaration dated September 22, 2025 was prepared on the Defendants' side and presented to Obeso for signature (Exhibit A). That declaration stated that, in addition to his work as a real estate agent operating under Premier Agency Real Estate's brokerage license, Obeso operated a separate business in which he solicited property owners to sell real estate for his own account.

57. Obeso has since testified under oath that the declaration is not correct, that he has no separate business, and that he signed the declaration without reading it. Obeso has testified that an accurate statement would have been that he made the calls for the benefit of his work as a real estate agent affiliated with Premier Agency Real Estate.

58. The disavowed independent contractor characterization is contradicted by Obeso's sworn testimony and is consistent with Defendants' awareness of their potential liability for the calls placed within the scope of the agency relationship.

## PLAINTIFF LIPP'S ALLEGATIONS

59. Plaintiff Lipp is the sole owner and user of his cell phone number ending in 0339.

60. Plaintiff Lipp registered his cell phone number on the DNC on November 14, 2021.

61. Plaintiff Lipp uses his cell phone number for personal and household use only as one would use a residential landline.

62. Plaintiff Lipp does not and has never used his cell phone number for business purposes or employment.

63. It has never been held out by Plaintiff Lipp to the public or advertised for business purposes.

64. It has only ever been used as a personal use phone number.

65. Plaintiff Lipp uses his cell phone number to communicate with family and friends.

66. Plaintiff Lipp uses his cell phone to deal with household issues like scheduling services.

67. Plaintiff Lipp's cell phone has a 619 California area code, but he resides in Corpus Christi, Texas.

68. Plaintiff Lipp did not own a property in California.

69. The calls that Plaintiff Lipp received from Premier Agency Real Estate were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

70. On April 26, 2025, at 12:01 PM, Plaintiff Lipp received an unsolicited call to his cell phone from 541-395-1241.

71. This call was not answered but a pre-recorded voicemail was left:




72. On May 5, 2025, at 5:46 PM, Plaintiff Lipp received a 2nd unsolicited call to his cell phone from 458-254-2125.

73. This call was not answered, but a pre-recorded voicemail was left:




74. Plaintiff Lipp believes that voicemails are pre-recorded because they are identical to each other.

75. The voicemails are both 31 seconds in length, contain the exact same generic wording, the same pauses and diction, the same period of silence before the voicemail ends, and because the voicemails are identical despite a 9-day separation between the 2 voicemails.

76. The voicemails ask Plaintiff Lipp to call 877-653-7127.

77. 877-653-7127 is the phone number for Alex Obeso, a Premier Agency Real Estate agent:



[18]

78. Obeso is licensed to work as a real estate agent for Premier Real Estate Agency as of June 5, 2025, and has been licensed since December 5, 2024:

[18] https://www.facebook.com/alexobesorealtor

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Obeso, Alejandro Jr |
| **Mailing Address:** | 1072 STRAWBERRY VALLEY DR<br>CHULA VISTA, CA 91913 |
| **License ID:** | 01398536 |
| **Expiration Date:** | 03/01/28 |
| **License Status:** | LICENSED |
| **Salesperson License Issued:** | 01/09/04 |
| **Former Name(s):** | NO FORMER NAMES |
| **Responsible Broker:** | License ID: 02240990<br>Premier Agency Real Estate Inc.<br>900 LANE AVE STE 100<br>CHULA VISTA, CA 91914 |

[19]

79. The voicemails that Plaintiff Lipp received from Obeso on behalf of Premier Agency Real Estate are solicitations as they ask Plaintiff if he is interested in selling his property.

80. Premier Agency Real Estate provides cash offer services as part of its business offerings:

[19] https://www2.dre.ca.gov/publicasp/pplinfo.asp?License_id=01398536



[20]

81. When a consumer accepts a cash offer on a property, they are incurring a cost as a result of the depreciated property value they receive.

82. Flipperforce, a real estate platform, explains that there is a 70% rule formula that property buyers use to evaluate how much a property should be purchased for, which generally equates to the value of the property minus 15% in repair costs and 15% in profit:

[20] https://www.premieragencyre.com/copy-of-home (copy as of July, 2025)



FAQ

**Why Do House Flippers Use 70%?**

In order to successfully flip houses you need to buy properties at a big enough discount to make a profit and cover all of the other 'Fixed Costs' (buying, holding, selling & financing costs).

When you multiply the After Repair Value by 70% you are discounting the property by 30% to cover your Profit and Fixed Costs.

Generally speaking, the 30% reduction is broken down as roughly 15% for your Profit and 15% for the Fixed Costs. [21]

83. Plaintiff Lipp has never done business with Premier Agency Real Estate.

84. Plaintiff Lipp has never provided his cell phone number to Premier Agency Real Estate.

85. Plaintiff Lipp does not own a property in California, and Premier Agency Real Estate operates primarily in San Diego, California.[22]

86. Plaintiff Lipp never provided consent to Premier Agency Real Estate or any of Premier Agency Real Estate's real estate agents to receive solicitation calls to his cell phone, including calls that were placed using a pre-recorded message.

87. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendants have harmed Plaintiff Lipp in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the mental distress they caused.

---

[21] https://www.flipperforce.com/how-to-flip-houses/chapter-4-how-to-analyze-house-flip-deals/70-percent-rule-formula

[22] https://www.linkedin.com/company/premier-agency-re/

88. Seeking redress for these injuries, Plaintiff Lipp, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

89. Plaintiff Lipp brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) a real estate agent affiliated with Defendant Premier Agency Real Estate called on their cellular telephone number (2) using an artificial or pre-recorded voice.

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) a real estate agent affiliated with Defendant Premier Agency Real Estate called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

90. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5)

the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Lipp anticipates the need to amend the Class definition following appropriate discovery.

91. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

92. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

i. whether Defendant Premier Agency Real Estate's agents placed pre-recorded voice message calls to Plaintiff Lipp and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

ii. whether Defendant Premier Agency Real Estat's agents placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

iii. whether the calls constitute a violation of the TCPA;

iv. whether Premier Agency Real Estate is vicariously liable, and whether Cardona is individually liable, for the calls placed by the agents;

v. whether Class members are entitled to an injunction against Defendants preventing further unsolicited prerecorded calls; and

vi. whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

93. **Adequate Representation**: Plaintiff Lipp will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff Lipp has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Lipp and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff Lipp nor his counsel have any interest adverse to the Classes.

94. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the

Classes as wholes, not on facts or law applicable only to Plaintiff Lipp. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lipp and the Pre-recorded No Consent Class)**

95. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

96. Premier Agency Real Estate, through its agent Obeso and with the knowledge, authorization, and ratification of Defendant Cardona, transmitted unwanted telephone calls to Plaintiff Lipp and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message. The calls were placed within the scope of Obeso's agency relationship with Premier Agency Real Estate, under Premier Agency Real Estate's right of control, and for the Brokerage's benefit, rendering Premier Agency Real Estate vicariously liable and Cardona individually liable.

97. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Lipp and the other members of the Pre-recorded No Consent Class.

98. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Lipp and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lipp and the Do Not Call Registry Class)**

99. Plaintiff repeats and realleges paragraphs 1-94 of this Complaint and incorporates them by reference herein.

100. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

101. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

102. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Lipp and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

103. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Lipp and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

104. As a result of Defendants' conduct as alleged herein, Plaintiff Lipp and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

105. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Lipp requests a jury trial.

**RICHARD LIPP JR.**, individually and on behalf of all others similarly situated,

DATED this 19th day of October, 2026.

By: /s/ *Rachel E. Kaufman*
Rachel E. Kaufman
KAUFMAN P.A.

237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*